McCOURTNEY ET AL., APPELLANTS, VS. SLOAN ET AL., RESPONDENTS.

1. A surety may use the name of his principal to enforce contribution from a co-surety.

2. If a party, in the prosecution of a lawful demand, in a lawful way, fairly acquires a legal right, it cannot be disturbed by a court of equity. There must be some trust, confidence, agreement, or relationship imposing an obligation to avoid the advantage obtained, to justify such interference.

## APPEAL from St. Louis Circuit Court—In Chancery.

### STATEMENT OF THE CASE.

Sometime in the year 1819, John McCourtney, Sr., John McCourtney, Jr., Thos. Sloan, the defendant, and Soloman G Krepps, all living in Fayette county Pa., became sureties for the firm of Baltzell & Danforth, at Wheeling, Va., for a debt which that firm owed to one Jonathan Walton, for whiskey, and for which they gave their joint obligations, with their principals, dated the 11th of June, A. D. 1819, payable nine months after date, for $743 50, with interest. Afterwards, said Baltzell & Danforth, the principals, having become insolvent, the said sureties, on the 25th of July 1821, confessed judgment in favor of said Walton for the debt, amounting to $836 43⅛ and costs, which was duly entered of record, on the 30th of said July in the court of common pleas of Fayette county, and on which Sloan and Krepps paid Walton $418 20, on said 25th of July. On the 1st of January, 1822, John McCourtney, Sr., and wife, by their deed of that date, conveyed the premises described in the bill, for the consideration of —— love and affection, to the complainant, Martin McCourtney, of which the defendants, at the time, had actual notice. And in pursuance of and under said conveyance, said Martin, as early as the spring of 1833, took possession of, and ever since has resided with his family upon said premises, cultivating and improving them by clearing the land and erecting fences and several buildings upon the same. And on the 27th of January 1841, sold to his co-plaintiff, Henry H, Goodwin, by deed, in due form and duly recorded; 245 17 acres of said premises, for the consideration of $1580 00

On the 10th December, 1822, and while said Sloan and Krepps, as yet, had paid no more than their own share of the aforesaid security debt, a suit by attachment was commenced in the circuit court of St. Louis county, against John McCourtney, Sr., as a non-resident, in the name of Jonathan Walton, upon the aforesaid judgment, in which the sum sworn to was $418 23½ cents. The said John McCourtney, Sr., the defendant in the attachment suit, was not served with process, nor did he appear in the case, but the attachment was levied upon the premises described in the bill. On the 29th October, 1823, judgment by default was rendered upon publication of notice to John McCourtney, Sr., as a non-resident dependent, for $827 06 and $112 97 damages, and costs of suit, although the sum sworn to was only $418 23½, with interest from the 25th July, 1821. Josiah Spalding, Esq., was the attorney who brought the suit, and was employed as such for that purpose, by said Sloan and Krepps, who were his clients, and who, as such, sent to him the exemplification of the record of the judgment, upon which the suit was brought, as belonging to them. Spalding knew nothing of Jonathan Walton in the transaction. His communication was entirely with Sloan and Krepps. On the 25th of November, 1828, a bond was filed for execution on said judgment, and attached to said bond is the affidavit of Henry G. Dales, verifying the hand writing of Sloan and Krepps two of the obligors and sureties, that they were each worth more than $2000, and that the

---

McCourtney et al. vs. Sloan et al.

---

claim belonged to said Sloan. On the 13th February, 1829, a special *fi. fa.* was issued against the land attached, under which it was sold on the 25th March of that year, to Spalding, for the ultimate benefit of Sloan and Krepps, for whom he was then acting, in the matter of the purchase, and for whose benefit he purchased the same, for $50 00, with the understanding, that he would, at any time, convey the land to them, on their paying him his fees for his services. The $50 00 paid by Spalding for the land, was credited upon the execution, he paying the money to the sheriff, and a deed was executed to him by the sheriff for the land. At the time of the sale, the land was worth from nine to ten dollars per acre, and there were 480 arpents, or 408 33 acres in the tract.

Afterwards, Spalding, still acting as the agent and attorney of Sloan & Krepps, on receiving from them his fees aforesaid, amounting to $32 00, conveyed the land, by his suit claim deed, on the 28th October, 1829, to Sloan & Krepps, for the nominal consideration of $1 00. After the purchase for Sloan & Krepps, by their agent and attorney, Spalding, as above stated, the defendant, Sloan, on the 25th July, 1829, called on John McCourtney, jr., in the city of Wheeling, where he then resided, and demanded of him contribution, on account of his suretyship, as stated above. The bill alleges, that the demand by Sloan, was for said John's contributory share, say ¼, and also for the share of John McCourtney, sr., being also ¼, that is for one half; and said John, jr., on his oath testified to the same thing. It is also alleged in the bill, and sworn to by said John, jr., as a witness, that the said John, jr., did pay the aforesaid contributory shares, with interest, both for himself and for John, sr. having executed his three notes therefor, which were paid at maturity. It is stated by Sloan, in his answer, and also deposed by said Jonathan Walton, that said Jno. McCourtney, jr. paid only his own contributory share of one fourth, and one third of the share of Jno. McCourtney, sr., and so the circuit court found. But on the settlement, between Sloan and John McC. jr., the land bought for Sloan & Krepps, by Spalding, and conveyed to them by him, as aforesaid, and shown to have been worth from 9 to 10 dollars per acre, was not taken into account, nor was any credit given by them for the same in the settlement.

The court below decreed, that upon the payment, by complainants to defendants, of the contributory share of Jno. McC. sr., of said security debt, with interest, the title to the premises described in the bill, vested in them; holding that said land was liable for said contributory share of Jno. McC. sr. The bill also alleged, and it was so proved by the witness, Jno. McC. jr., that at the time the parties became sureties for Baltzell & Danforth, the whisky bought was put into Sloan's possession, at a pledge to indemnify them for their suretyship. But Danforth purchased about $200 worth of stills from Sloan, and the latter, in order to make his own debt for the stills secure, in violation of his faith to his sureties, delivered up the whisky to B. & D., without the knowledge or consent of his co-sureties. And that shortly afterwards B. & D. became insolvent. That all these facts were within the knowledge of one Ezekiel Baldwin, and that as long as he lived, the McCourtneys refused to settle with Sloan and Krepps for any part of the aforesaid security debt paid by him. And that it was only after said Baldwins death, and when the proof of the said fact was impossible, that they consented to settle. These facts were denied by the answer of Sloan, and they were not affirmed by the court on the hearing. There was evidence of the insolvency of Jno. McC. sr., on the 11th of January, 1822. The deed from Jno. McC. to Martin, offered in evidence by complainants, being an exhibit to his bill, was objected to because the certificate of acknowledgment was defective, in that it did not establish the identity of the grantor.

**WELLS & BUCKNER,** for appellants.

I. The decree, as question of equity practice, cannot be sustained. The pleadings were not in a condition for the court to make a decree, giving affirmative relief to the defendants. There was no cross-bill, and the defendant had not sought for any affirmative relief in the cause. The only decree the court could make, was, either to perpetuate the injunction or

dismiss the bill and dissolve the injunction: Story's Eq. Pleadings 414; German vs. Mackin, C. Paige 238.

II. There is no principle of equity that authorized the court to decree the contributory share of Jno. McCourtney, Sr. of the Walton debt, paid by the defendants, to be a lien upon the tract of land in controversy. The deed from the father to son, was either fraudulent and void as against Walton and those claiming under the judgment, or it was *bona fide* and good against his creditors. If the former, the title of the son is void, as against the defendants, and ought to be so decreed. They would take the land without any lien or other equity of the plaintiff. If, on the contrary, the deed is good against the creditors of the father, or those claiming under them,. there is no legal, nor equitable obligation, express or implied, which should make the son responsible for the debt of the father. Walton had no equitable lien upon this land, nor did the co-sureties acquire any by their attachment suit, in the hands of the grantee.

III. Natural equity is not *legal* equity, and there would have been as much legal equity in decreeing the title to the land in the defendants, on condition that they would pay to complainants, by a given day, the amount of his father's contributory share of the Walton debt, as there is in the decree made by the court. The facts and pleadings will admit of no such splitting of defences, or giving half a loaf to one party and the other half to his adversary.

IV. The bill should have been dismissed, and the injunction dissolved. All the material averments in the bill are pointedly and flatly denied in the answer of the defendants. The answers are not disproved by two witnesses, nor by one and corroborating circumstances. On the contrary, the only witness for complainant, Jno. McC. Jr., in some important points, disproves the statements in the bill and supports the answers: Bartlett vs. Glasscock, 4 Mo. R. 62; Gordon vs. Roundtre, 8 Mo R. 19; Prior vs. Mathews, 9 Mo. R. 268.

V. The only real question in this case, is, whether the deed by Jno. McC. to Martin, being a deed, not for a valuable consideration, as shown by the deed itself, and not controverted by the complainants, is void as against the debt of Jno. Walton, and against those claiming under his judgment and execution. The proof is abundant and conclusive, that the father owed his portion of this debt, when the deed to his son was executed; that he was then on the verge of bankruptcy; that there were many large debts against him at the time; that his property and means were comparatively valueless, and that he appealed to be discharged under the State insolvent laws of Pennsylvania—this being one of the scheduled debts. The date of the deed is, 1st January, 1822. The suit by attachment was commenced 10th Dec. 1822. The land was attached 15th January following, and the deed of the sheriff to Spalding, executed 30th March, 1829. The sale to Spalding vested the title in him, as against the deed to the complainant: Gamble vs. Johnston, 9 Mo. R. 628; Hine's Lessee vs. Longworth, 11 Wheat. R. 199; 2 Story's Eq. Juris. Sec. 355 to 366; Reade vs. Livingston, 3 John C. R. 501; Saxton vs. Wheaton, 8 Wheaton 229-30, Geyer's Digest p. 208.

The ground assumed by the bill, that as between the several sureties to Walton, the right of contribution of Sloan, as against the two McCourtneys, was lost by bad faith on the part of Sloan, is unsupported by any thing in the evidence, except the deposition of Jno. McC. Jr.; nor is there any thing in the bill or evidence that intimates that Jno. McC. Sr. ever made any objection to paying his proportion of the debt, on the account stated in the bill as to Jno. McC. Jr.

VII. Admitting the facts, in relation to the giving of the notes charged in the bill to be true, the bill ought to have been dismissed, because the sale to Spalding was made long prior to the date of the notes, and there was no pretence of a satisfaction of the judgment, according to the showing of the bill until after the sale to Spalding. But the evidence shows that the notes were not given for the full contributory share of John McC. Sr., and that allowing him credit for the amount for which the land sold, there is yet a balance due by him to Sloan & Krepps.

VIII. But it is objected that Sloan & Krepps are not entitled to the rights of creditors, as against the voluntary deed of McCourtney, because the suit was instituted by them, and for

McCourtney et al. vs. Sloan et al.

their exclusive benefit, and that Walton was merely a nominal party. The answer explains how this matter stands, and there is nothing in it which affects the rights of defendants. Walton had a judgment against the four debtors; two of them paid their equal shares and were bound to the creditor for the whole. The two McCourtneys, in equity bound to pay their equal parts, were insolvent, and while Walton was willing to give Sloan & Krepps time to pay the shares of the McCourtneys, he was also anxious that the McCourtneys should be made to pay their shares. Accordingly he authorized Sloan & Krepps to use his name, in the institution of the attachment suit, they employing counsel and being responsible for costs. He was not passive in this arrangement, for the evidence shows, that he made the affidavit for the attachment, and was principal in the attachment bond. There was nothing in this arrangement inequitable, immoral, or against the policy of the law, or of which an honest debtor can rightfully complain.

IX. The court erred in permitting the deed from John McCourtney to complainant to be used in evidence. The identity of the grantor is not shown, in the certificate of proof: R. S. 1825, conveyances, Sect. 10.

POLK, for respondents.

I. Sloan and Krepps, and the two McCourtneys, being co-sureties for Baltzell and Danforth, on the latter becoming insolvent, it was obligatory on them, both at law and in equity, each to pay one-fourth of the debt, as his contributory share. And so the court below held. And the court, also, considering that the deed from John McCourtney and wife, to the complainant, Martin, was a voluntary deed, in consideration of love and affection, made when the grantor, John Sr., was insolvent, held that the land conveyed by it was liable for the aforesaid share of said grantor John, of the debt for which he was a co-surety. What more than this would the defendants claim? By this decree of the court they are placed exactly where they would have stood, if, at the time the security debt to Jonathan Walton fell due, John McCourtney, Sr., had been able and had stepped forward and paid his proportion of it. They, therefore, get by the decree, all they are entitled to, either in law or equity.

II. Nor does it change the position of the parties, with respect to each other, as co-sureties, nor their respective rights in regard to each other, as such, that judgment had been obtained in the attachment suit, and the land sold and bought in, for Sloan and Krepps, by their agent and attorney; because,

1. That suit, though in the name of Walton, was really brought by Sloan and Krepps for their own use and benefit, and to indemnify themselves against their co-surety, John McCourtney, Sr. See Spalding's testimony; also, the record of the suit itself, particularly the affidavit of H. G. Dales, on the bond for execution, and also the deed from Spalding to Sloan and Krepps.

2. No demand was ever made before the institution of that suit, by either Sloan or Krepps, or even Walton, upon John McCourtney, Sr., for his proportion of the security debt.

3. John McCourtney, Sr., the defendant in the attachment suit, was not served with process, did not appear, and had no notice of the proceedings; judgment was rendered for just twice as much as was shown to be due, and the land sold under the *Fi. Fa.*, for $50 00, in a lump, that was worth from nine to ten dollars per acre, or from $3500 00 to $4000 00.

4. After the land had been so bought, worth $3500 00 or $4000 00, for $50 00, Sloan and Krepps have a settlement with their co-surety, John McCourtney, Jr., in which they get from him, as we say, the share, both of himself and of John Sr., and as the court found the share of himself and one-third of the share of John Sr.; but at the time of such settlement, they do not take into account, the land so bought by them, worth $3500 00, nor even the $50 00 credited in the judgment. Indeed, they do not let John McCourtney, Jr. know any thing about the attachment suit in Missouri. If under such circumstances, the court below had allowed them to retain the land, it would have enabled them to be successful in perpetrating a fraud, both on John McCourtney, Jr. and John McCourtney, Sr. For they would be enabled to get land, worth

McCourtney et al. vs. Sloan et al.

$3500, for $50 00.   And yet, they had already received contribution from their co-surety, John Jr., without accounting to him for either the land or the $50 00 bid for it.

5. It is expressly stated in the answer of Sloan (the other defendants being legal representatives of Krepps are themselves unable to respond to the allegations of the bill,) that the proceedings by attachment, was instituted and prosecuted by Sloan and Krepps, "in order that they might make John McCourtney, Sr. pay his just and equitable proportion of the debt due to Walton."

Now this, my object, is answered exactly by the decree of the circuit court.   Thus that court enables itself by its decree, to accomplish the object it originally set out to attain.

Thus, they not only get, by the decree rendered in the cause, all, that in equity they are entitled to have as has been already shown above; but, also, the whole of the objects contemplated by them in the proceedings by attachment.   I ask with earnestness and emphasis, what right have they to complain?   Ought they not to be satisfied?

6. The circuit court committed no error in admitting in evidence, the deed from John McCourtney to Martin McCourtney, on the objections made to it in that court.   The certificate of proof did sufficiently identify the grantor as the person who executed the deed: Code of 1835; p. 121, secs. 14, 15; Alexander & Betts vs. Merry, 9 Mo. R. 525, and authorities there cited.

SCOTT, J., delivered the opinion of the court.

After a full examination of this cause, we cannot perceive the grounds on which an affirmance of the decree below can be sustained.   That decree, although its aim seems to be to do what is justice between the parties, is based upon principles at war with the rights of the appellants, acquired by a due course of law.   They insist on their rights, and although in the course of events, they have got the advantage, yet their conduct does not appear to have been affected by any circumstances which can impair their claims.

The matter of pledging the whisky to Sloan, as an indemnity to him and his co-securities, may be laid out of the question, as the charge is not supported by the evidence.

After Sloan and Krepps had satisfied half of the judgment against the four sureties, there was no impropriety in their using the name of Walton, the creditor, in order to recover the share of the debt due by John McCourtney, Jr.   Such a transaction is of daily occurance: sureties are constantly using the names of creditors to enforce contribution from a co-security.   Although the judgment was rendered for a sum twice as great as it should have been, yet that circumstance does not attach any blame to the appellants, as it appears from the records, that the sum actually due was only claimed, and the affidavit for the attachments only verified that sum.   The error, in the rendition of the judgment, was plainly a clerical misprision, and, so far as this cause is concerned, did not prejudice John McCourtney, Sr.   The fact, that Sloan did not call upon John McCourtney, Jr., for a settlement of his portion of the surety debt, until after the sale of the land in controversy

under an execution in the attachment suit, and his failure to mention that circumstance at the time of the settlement, creates no suspicion of a desire on his part, to obtain an undue advantage over McCourtney. The fact, that John McCourtney, Sr. was insolvent, imposed on the three remaining sureties an obligation to satisfy his portion of the debt. Until the determination of the attachment suit and a sale, it could not be ascertained what portion, if any, of the surety debt would fall upon him. The suit, we may suppose, was wholly unavailing. The land sold for fifty dollars only; of this sum, thirty-two dollars were paid as the attorney's fee. Considering the nature of the suit and the residence of the parties, little is hazarded in saying, that the balance of the sum was absorbed in the payment of costs and fees. It does not appear that Sloan knew the value of the land at the time of the sale. He knew of the claim of the defendant, and that must have depreciated it in his estimation. It is a little remarkable, that this land should have been worth ten dollars an acre, upwards of twenty years ago, and should have been sold in 1841 for less than seven dollars an acre. But it is a satisfactory answer to the objection of a failure to disclose the prosecution of the attachment suit, that there was no trust, confidence, agreement, or any relationship between Sloan and John McCourtney, Jr., which imposed on him any such obligation. There was no fraud, nor any circumstance which can affect Sloan with bad faith. In the prosecution of a lawful demand, in a lawful way, he had fairly acquired a legal right, and no law imposed on him the necessity of disclosing the fact or accounting for his purchase, to any one.

The objection, that no demand was made on John McCourtney, Sr., before the institution of the attachment suit, cannot, with any propriety, be urged in this collateral proceeding. He might have appeared in the circuit court, at any time within three years, and contested the legality of the proceedings against him. Not having done so, no error in them can now be enquired into.

It is not pretended that the deed to complainant, Martin McCourtney, by his father, John McCourtney, in 1822, was, under the circumstances valid against the defendants, Sloan & Krepps. The view we have taken of the case relieved us from the necessity of determining as to the sufficiency of the certificate of acknowledgment of that deed, and no opinion is advanced on that question. The other judges concurring, the decree is reversed and the bill dismissed.